RECEIVED

JUL 2 3 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT                    b

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

RICKY WAYNE GIPSON,                  CIVIL ACTION
        Plaintiff                    SECTION "P"
                                     NO. 1:14-CV-02278
VERSUS

TIM KEITH, et al.,                   JUDGE DEE D. DRELL
        Defendants                   MAGISTRATE JUDGE JAMES D. KIRK


REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant
to 42 U.S.C. § 1983 and supplemental state law claims, in forma
pauperis, by pro se plaintiff Ricky Wayne Gipson ("Gipson") on
July 8, 2014 and amended on August 26, 2014 (Doc. 9).  The named
defendants are Warden Tim Keith (former warden of the Winn
Correctional Center ("WCC") in Winnfield, Louisiana), Nicole
Walker ("Walker") (assistant warden at WCC), Jack Garner
("Garner") (president of Corrections Corporation of America
("CCA"), the operator of WCC), Daniel Marr ("Marr") (medical
director at WCC), and James LeBlanc ("LeBlanc") (Secretary of the
Louisiana Department of Public Safety and Corrections).  Gipson
contends that, while he was incarcerated in WCC in 2013 and 2014,
he was exposed to smoke from cigarettes and illegal substances

1

which have injured him.  For relief, Gipson asks for general and punitive damages, a declaratory judgment, and injunctive relief (Doc. 9).

Gipson contends in his complaint that he has been on prescription medication for smoke-related allergies since January 11, 2008 (Doc. 1).  Gipson contends that, on December 14, 2013 he was in a simple fight with another inmate, and Gipson was moved from a non-smoking tier (D-1) to A-1 tier, which was "filled with smoke from cigarettes, mojo, crystal meth, and marijuana, causing [him] respiratory related problems and severe headaches requiring medical treatments at [his} costs [sic]" (Doc. 9).  Gipson further alleges that he won his disciplinary appeal for the simple fight on January 22, 2014 and the report was ordered expunged (Doc. 9). Gipson contends he has had respiratory related problems and severe headaches from exposure to smoke (ETS) since 2010 and that Keith, Walker and LeBlanc knowingly committed fraud in denying there was no available non-smoking tier at WCC to cover up the fact that cigarettes and/or other smoke-able drugs are smoked on every tier at WCC.  Gipson contends the CCA employees do nothing to prevent smoking at WCC.

Garner, Marr, Walker, and LeBlanc answered the complaint (Docs. 16, 18) and filed a statement of issues for trial (Doc.

22).  Gipson filed a motion for summary judgment with an affidavit and exhibits (Doc. 23).   Defendants filed a brief in opposition to Gipson's motion, with a statement of material facts and an affidavit (Doc. 28), to which Gipson filed a response (Doc. 31). LeBlanc also filed a motion to dismiss for failure to state a claim (Doc. 29).

Warden Keith was not served because he is no longer employed at WCC.   Accordingly, it will be recommended that the complaint against Warden Keith be dismissed without prejudice under Fed.R.Civ.P. 4(m).  See McGinnis v. Shalala, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191, 114 S.Ct. 127 (1994); Systems Signs Supplies v. U.S. Dept. of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990); Kersh v. Derosier, 851 F.2d 1509, 1512 (5th Cir. 1988).

Gipson's motion for summary judgment (Doc. 23) and LeBlanc's motion to dismiss (Doc. 29) are now before the court for disposition.

<u>Law and Analysis</u>

<u>LeBlanc's Motion to Dismiss</u>

LeBlanc filed a motion to dismiss for failure to state a claim on which relief may be granted, pursuant to Fed.R.Civ.P. rule

3

12(b)(6) (Doc. 29), contending that Gipson failed to state any facts which involve LeBlanc.

A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts. Crowe v. Henry, 43 F.3d 198, 203 (5th Cir. 1995). In particular, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Hirras v. National Railroad Passenger Corp., 10 F.3d 1142, 1144 (5th Cir. 1994), vacated on other grounds, 512 U.S. 1231, 114 S.Ct. 2732 (1994); Doe, 753 F.2d at 1102. For the purposes of a motion to dismiss for failure to state a claim upon which relief can be granted, the factual allegations of the complaint must be taken as true, and any ambiguities must be resolved in favor of the pleader. Doe v. U.S. Dept. of Justice, 753 F.2d 1092, 1101 (D.C.Cir. 1985). It is presumed that general allegations embrace the specific facts that are necessary to support the claim. National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 114 S.Ct. 798, 803 (1994), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 2137 (1992).

4

Gipson contends he is suing LeBlanc in both his official and individual capacities.

Gipson's suit against LeBlanc in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections is barred in part by immunity.  The Eleventh Amendment bars suit against a state official when the state is the real substantial party in interest.  The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.  And, as when the state itself is named as the defendant, a suit against state officials that is in fact a suit against a state is barred regardless of whether it seeks damages or injunctive relief. Aguilar v. Texas Dept. of Criminal Justice. 160 F.3d 1052, 1054 (5th Cir. 1998), cert. den., 528 U.S. 851, 120 S.Ct. 130 (1999). Neither a state nor its officers acting in their official capacities are "persons" under §1983.  Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 258, 362, 116 L.Ed.2d 301 (1991).  Therefore, LeBlanc in his official capacity is immune from Gipson's action for damages.

However, in Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908), the Supreme Court made an exception to the Eleventh Amendment.  To meet the Ex Parte Young exception, a plaintiff's suit alleging a

violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect.  Aguilar, 160 F.3d at 1054.  Official capacity actions for prospective relief are not treated as actions against the state.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989).  Therefore, to the extent that Gipson asks for prospective declaratory and injunctive relief against defendants, LeBlanc does not have official capacity immunity against Gipson's suit.

In his action against LeBlanc in his individual capacity, Gipson contends LeBlanc knowingly committed fraud by denying that there is no available non-smoking tier at WCC in order to cover up the fact that cigarettes and other smoke-able drugs are smoked on every tier at WCC.  As evidence, Gipson relies on a Second Step Response, signed by Secretary LeBlanc (or his designee, which has been the usual method for review of grievances) FN1 in June 2014, which states that all of the tiers of the Dogwood dorm at WCC are smoke-free (Doc. 9, Ex.).  However, Gipson has not alleged or shown that Secretary LeBlanc had actual knowledge that inmates were permitted to smoke in every tier in WCC and, therefore, cannot

_____

1 The signature on the Second Step Response is unintelligible.

show that LeBlanc was deliberately indifferent to Gipson's conditions of confinement and serious medical needs.

Gipson also appears to have named Secretary LeBlanc as a defendant in this case in his capacity as a supervisor. The doctrine of respondeat superior, which makes an employer or supervisor liable for an employee's alleged tort, is unavailable in suits under 42 U.S.C. §1983

Well settled §1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions. Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury. Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. den., 508 U.S. 951, 113 S.Ct. 2443 (1993); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Gipson alleges that the statutory smoking ban is not enforced at WCC, and that LeBlanc has tried to cover up that fact in his response to Gipson's greivance (Doc. 9, Ex.). However, as stated above, Gipson has not alleged or shown that Secretary LeBlanc had personal knowledge (prior to receiving Gipson's grievance, if he read it himself) that inmates were allowed to smoke in WCC and that Gipson was subjected to second

hand smoke, and Gipson has not alleged or shown that LeBlanc promulgated or implemented a policy or custom that permits inmates to smoke in WCC.  To the contrary, Gipson admits there is a ban on smoking in all prisons in Louisiana.  Therefore, Gipson has not shown that LeBlanc was actually aware of and personally involved in the alleged violation of Gipson's constitutional rights and has not stated a claim against LeBlanc in his individual capacity.

Therefore, LeBlanc's motion to dismiss (Doc. 29) should be granted as to Gipson's claims against LeBlanc in his individual capacity, granted as to Gipson's claims against LeBlanc in official capacity for monetary damages, and denied as to Gipson's claims against LeBlanc in his official capacity for prospective declaratory and injunctive relief.

Medical Director Marr

Gipson named WCC Medical Director Marr FN2 as a defendant in this case in both his official and individual capacities.

In order to establish the personal liability of a certain defendant to a plaintiff who is claiming damages for deprivation of his civil rights, that plaintiff must show that particular defendant's action or inaction was a violation of the plaintiff's civil rights.  Reimer v. Smith, 663 F.2d 1316, 1322 n. 4 (5th Cir.

_____

2 A suit against Marr in his official capacity as the Medical Director at WCC is not considered to be a suit against the State of Louisiana.

1981).  Also, <u>Malley v. Briggs</u>, 475 U.S. 335, 106 S.Ct. 1092, 1098

n. .7 (1986).  Gipson has alleged an act or omission by Medical

Director Marr which constituted a violation of Gipson's civil

rights.

To the extent that Gipson appears to have named Marr as a

defendant in this case in his capacity as a supervisor, Gipson has

not alleged any specific facts that involve Marr.

The doctrine of respondeat superior, which makes an employer

or supervisor liable for an employee's alleged tort, is unavailable

in suits under 42 U.S.C. §1983.  <u>Thompkins v. Belt</u>, 828 F.2d 298,

303 (5th Cir. 1987).  Well settled §1983 jurisprudence establishes

that supervisory officials cannot be held vicariously liable for

their subordinates' actions.  Supervisory officials may be held

liable only if: (1) they affirmatively participate in acts that

cause constitutional deprivation; or (2) implement

unconstitutional policies that causally result in plaintiff's

injury. <u>Mouille v. City of Live Oak, Tex.</u>, 977 F.2d 924, 929 (5th

Cir. 1992), <u>cert. den.</u>, 508 U.S. 951, 113 S.Ct. 2443 (1993);

<u>Thompkins</u>, 828 F.2d at 303.

Gipson has not alleged or offered any proof of any acts or

omissions of Marr or any unconstitutional policies implemented by

Marr which have deprived Gipson of his constitutional rights. Therefore, Gipson's action against Marr should be dismissed.

## CCA President Garner

Gipson also named Corrections Corporation of America ("CCA") President Garner as a defendant in his official and individual capacities.  WCC is owned by the State of Louisiana but was operated by CCA at the time of the events described herein.

Again, Garner appears to have named Garner was a defendant in this case in his capacity as a supervisor, since Garner has not made any specific factual allegations to show an act or omission by Garner that violated his constitutional rights.  Instead, Gipson appears to have sued Garner in his supervisory capacity as the President of CCA, but Gipson has not alleged or shown that Garner promulgated or implemented policies or customs which allowed inmates to smoke in WCC.

Therefore, Gipson's action against Garner should be dismissed with prejudice.

## Gipson's Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

11

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial.  In this analysis, we review the facts and draw all inferences most favorable to the nonmovant.  Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989).  However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.  Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

1.

Gipson contends defendants are liable to him for injuries he sustained when he was exposed to environmental smoke from tobacco and illegal drugs in WCC in 2013 and 2014.  Gipson alleges he has been incarcerated in WCC since November 2007, is not scheduled for release until 2026, is allergic to cigarette smoke, and the doctor ordered that he be placed on a non-smoking tier (Doc. 23, Ex. A).  Gipson contends that Keith, Walker, and LeBlanc knowingly committed fraud when they denied that there is no available non-smoking tier at WCC, in order to cover up the fact that cigarettes and other smoke-able drugs are smoked on every tier at WCC and

12

that the prison officials at WCC do nothing to prevent it or take corrective measures.

When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs, e.g., food, clothing, shelter, medical care, and reasonable safety, it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him but from the limitation which it has imposed on his freedom to act on his own behalf. Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996), and cases cited therein. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Among unnecessary and wanton inflictions of pain are those that are totally without penological justification. In making this determination in the context of prison conditions, a court must ascertain whether the officials involved acted with deliberate indifference to the inmates' health or safety.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is

"sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976).  The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm.  Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980 (1994).

In Helling v. McKinney, the Supreme Court held that prison officials may violate the Eighth Amendment's prohibition against cruel and unusual punishment by exposing inmates to an excessive level of environmental tobacco smoke ("ETS").  The Supreme Court identified both objective and subjective elements.  Objectively, a plaintiff must show that he himself is being exposed to unreasonably high levels of ETS.  The objective factor not only embraces the scientific and statistical inquiry into the harm caused by ETS, but also whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.  Subjectively, the plaintiff must prove deliberate indifference, considering the officials' current attitudes and conduct and any policies that have been enacted.  Helling v. McKinney, 509 U.S. 25, 33-35, 113 S.Ct. 2475, 2481-482 (1993).

To prove unconstitutional prison conditions, inmates need not show that death or serious injury has already occurred; they need only show that there is a substantial risk of damage to his future health.  Helling, 509 U.S. at 35, 113 S.Ct. at 2481.

Therefore, to obtain relief, a prisoner must prove not only that the level of ETS to which he is exposed is unreasonable, but also that prison officials have shown "deliberate indifference" to the health risks associated with second hand smoke.  The adoption of a smoking policy bears heavily on the inquiry into deliberate indifference.  See also, Whitley v. Hunt, 158 F.2d 882, 887-88 (5th Cir. 1998); Rochon v. City of Angola, 122 F.3d 319, 320 (5th Cir. 1997); Wilson v. Lynaugh, 878 F.2d 846 (5th Cir.), cert. den., 493 U.S. 969, 110 S.Ct. 417, 107 L.Ed.2d 382 (1989).

## 2. Objective Element

For the objective component, Gipson must prove that the level of ETS to which he ass exposed ass unreasonable.  This inquiry is two—pronged.  Gipson must provide scientific and statistical inquiry into the harm caused by ETS, and evidence to show that society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.

Gipson's scientific and statistical inquiry into the harm caused by ETS is satisfied by the United States Surgeon General's 2006 report, of which the court takes judicial notice pursuant to F.R.E. rule 201. FN3  U.S. Department of Health and Human Services, "The Health Consequences of Involuntary Exposure to Tobacco Smoke: A Report of the Surgeon General--Executive Summary," available at http://www.surgeongeneral.gov/library/secondhandsmoke/report/exe cutivesummary.pdf.  In 2006, the United States Surgeon General issued his report setting forth the scientific evidence and findings that establish there are no safe levels of exposure to ETS and that ventilation is insufficient to address the health risks posed by ETS.  That conclusion has been accepted by many courts within the Fifth Circuit as completely satisfying the objective component of the plaintiff's burden of proof. Samuels v. Terrell, 2015 WL 4092868, *5 (W.D.La. 2015) (Lake Charles Division); Burke v. Cox, 2014 WL 2440926, *4 (W.D.La. 2014 (Monroe Division); Samuels v. Arnold, 2014 WL 1340064 (W.D.La. 2014) (Shreveport Division); Adams v. Banks, 2010 WL 2301695, 499

---

3 Compare, Fisher v. Caruso, 2006 WL 2711807, as (E.D.Mich.), modified, 2006 WL 2990318 (E.D.Mich. 2006); Scott v. Hollins, 2006 WL 1994757, * 6 (W.D.N.Y. 2006); Warren v. Keane, 937 F.Supp. 301, 305-306 (S.D.N.Y. 1996), aff'd, 196 F.3d 330 (2d Cir. 1999).

.

(S.D.Miss. 2010) (Western Division); <u>Sivori v. Epps</u>, 2009 WL 799463, *7 (S.D. Miss.)(Hattiesburg Division); <u>Hicks v. Corrections Corp. of America</u>, 2009 WL 2969768, *6 (W.D.La. 2009)(Alexandria Division). See also, <u>Murrell v. Casterline</u>, 307 Fed.Appx. 778, 779 (5th Cir. 2008).

However, the Fifth Circuit held in 2001, before the Surgeon General's report on the dangers of exposure to second-hand smoke, that "sporadic and fleeting exposure to second-hand smoke does not constitute unreasonably high levels" of ETS, as required by the Supreme Court in <u>Helling v. McKinney</u>, supra. <u>Richardson v. Spurlock</u>, 260 F.3d 495, 498 (5th Cir. 2001). FN4  That holding does not appear to have continued viability in the wake of the Surgeon General's scientific evidence and finding that there are no safe levels of exposure to second hand smoke. However, <u>Richardson</u> is still relied on by many courts, which continue to apply the "sporadic and fleeting exposure" test to the objective element of second-hand smoke claims. Therefore, in the wake of the Surgeon's General's report, the issue of what constitutes "excessive levels of ETS" in the Fifth Circuit appears to be uncertain. See <u>Bruce v. Little</u>, 568 Fed.Appx. 283, 286 (5th Cir. 2014).

---

4 Also, <u>Allen v. Morgan</u>, 66 Fed.Appx. 526, *1 (5th Cir. 2003); <u>Callicutt v. Anderson</u>, 48 Fed.Appx. 916, *1 (5th Cir. 2002).

Gipson must also show, for the objective element of his burden of proof, that society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.  Contemporary standards with regard to second-hand smoke are set forth in the Surgeon General's 2006 report, which states in conclusion, "Since 1986 the attitude of the public and social norms around secondhand smoke exposure have changed dramatically to reflect a growing viewpoint that the involuntary exposure of nonsmokers to secondhand smoke is unacceptable."  The Louisiana Smoke-Free Air Act, La.R.S. 40:1300.252, et seq., is also evidence of society's increasing intolerance to ETS.  Williams v. Johnson, 2014 WL 2155211 (W.D.La. 2014).  The intent of the ACT is stated in La.R.S. 40:1300.252:

> "The legislature finds and determines that it is in the best interest of the people of this state to protect nonsmokers from involuntary exposure to secondhand smoke. The legislature further finds and determines that a balance should be struck between the health concerns of nonconsumers of tobacco products and the need to minimize unwarranted governmental intrusion into and regulation of private spheres of conduct and choice with respect to the use or nonuse of tobacco products in certain designated public areas and in private places. Therefore, the legislature hereby declares that the purpose of this Part is to preserve and improve the health, comfort, and environment of the people of this state by limiting exposure to tobacco smoke."

In Louisiana, smoking is now prohibited in public buildings and places, in or near public schools, enclosed work areas (including private employment), outside of state office buildings, and in prisons.  La.R.S. 40:1300.256.  Smoking has been banned in all Louisiana prisons (including state, local and private correctional facilities) since August 15, 2009.  La.R.S. 40:1300.256(B)(14).  Therefore, Gipson has shown that society considers the risk of exposure to ETS to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.  It is noted that, regardless of whether the "fleeting and sporadic" test is still viable, Gipson alleges (and complained to the WCC officials) that, as a dorm orderly, he was subjected to second hand smoke from an inmate smoking in the bunk underneath his and from inmates smoking daily inside the tier in which he was housed.  The exposures complained of appear to be more than "fleeting and sporadic."

Gipson has met the objective component of his burden of proof.

### 3. Subjective Element

For the subjective element of his burden of proof, Gipson must prove that defendants were deliberately indifferent to his serious medical needs and/or to a serious risk to his future health, considering the officials' current attitudes and conduct

19

and any policies that have been enacted.  The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm.  Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980 (1994).  Subjective recklessness, as used in the criminal law, is the appropriate test for deliberate indifference.  Norton, 122 F.3d at 291, citing Farmer, 511 U.S. at 838-40, 114 S.Ct. at 1980. The court may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious.  Hope v. Pelzer, 536 U.S. 730, 737-738, 122 S.Ct. 2508, 2514-2515 (2002), and cases cited therein.

A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  An official's failure to alleviate a significant risk that he should have perceived but did not, while not cause for commendation, cannot under our cases be condemned as the infliction of punishment.  Farmer, 114 S.Ct. at 1979.  See also, Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999)

The fact that smoking tobacco (and illegal substances) is statutorily banned in all prisons in Louisiana is sufficient to put prison officials on notice that second-hand smoke causes a substantial risk of serious harm.

Gipson shows in his statement of undisputed facts (Doc. 31) and verified complaints (which serve as affidavits FN5) that inmates are allowed to smoke in the dormitories, and that the prison officials know they are smoking and look the other way (Docs. 1, 9).  Gipson also shows in his verified complaints that exposure to ETS has caused him to have respiratory problems and severe headaches since 2010 (when he was removed from a non-smoking tier) and that he lives in a tier "filled with smoke from cigarettes, mojo, crystal meth, and marijuana" (Doc. 23).

Gipson also submitted a joint affidavit, signed by five other inmates in 2015, to show that inmates are allowed to smoke (cigarettes and illegal substances) in all of the dormitories with the knowledge of the prison officials and without being subjected to disciplinary action, that the ventilation system at WCC was recently repaired but has not been used, and that the windows stay closed most of the year (Doc. 23).

---

5 See Stewart v. Guzman, 555 Fed.Appx. 425 (5th Cir. 2014); Barker v. Norman, 651 F.2d 1107, 1118 (5th Cir. 1981); Murrell v. Bennett, 615 F.2d 306, 310 n.5 (5th Cir. 1980).

Gipson alleges that he is allergic to tobacco smoke, shows the prison doctor ordered that Gipson be housed on a non-smoking tier away from tobacco smoke (prior to the statutory ban on smoking) (Doc. 21, p. 260; Doc. 23, Ex. A), and shows through his medical records (Doc. 23, Appx. D; Doc. 21) FN6 that he has respiratory problems and headaches which, he contends, are worsened by exposure to second-hand smoke.

In rebuttal, defendants submit the affidavit of Brenda Smiley, the Chief of Unit Management at WCC since 2011, to show that every tier in WCC is non-smoking, that each tier is ventilated by a ventilation system, that inmates who are caught smoking are written up for a disciplinary violation, and that inmates are randomly searched for tobacco products (Doc. 28). Smiley further states in her affidavit that unauthorized smoking is rare and treated as a serious issue, and that prison officials do not "look the other way" and allow inmates to smoke in the tiers (Doc. 23). Smiley admits in her affidavit that she does not participate in security checks, but states that she observes the tiers regularly (Doc. 23).

---

6 Gipson's complete medical records (about 700 pages) were submitted by defendants (Doc. 21). It is noted that Gipson's last name is frequently misspelled at Gibson; however, the same inmate number appears on the records for both Gipson and "Gibson."

Since Gipson's evidence and defendant's evidence are in direct conflict on the issue of whether prison officials knowingly permit inmates to violate the smoking ban in WCC, there are genuine issues of material fact as to whether defendants are deliberately indifferent to Gipson's serious medical needs and/or to a serious risk to his future health that preclude a summary judgment at this time. Compare, Ware v. Baton, 480 Fed.Appx. 247, 248 (5th Cir. 2010)(holding that Ware's verified complaint and grievance create a genuine issue of material fact concerning whether the defendants actually enforced the no-smoking policy on a regular basis and, if not, whether the defendants' failure to enforce the policy constituted deliberate indifference to Ware's exposure to environmental tobacco smoke).

Since there are genuine issues of material fact as to whether defendants were deliberately indifferent to Gipson's serious medical needs and/or the risk to his future health which preclude a summary judgment at this time, Gipson's motion for summary judgment (Doc. 23) should be denied.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Gipson's complaint against Warden Keith be dismissed without prejudice under Fed.R.Civ.P. 4(m).

IT IS FURTHER RECOMMENDED that LeBlanc's motion to dismiss be GRANTED IN PART and that Gipson's actions against LeBlanc in his individual capacity and for monetary damages against LeBlanc in his official capacity be DENIED AND DISMISSED WITH PREJUDICE. LeBlanc's motion to dismiss should be DENIED IN PART as to Gipson's action against LeBlanc in his official capacity for PROSPECTIVE DECLARATORY AND INJUNCTIVE RELIEF.

IT IS FURTHER RECOMMENDED that Gipson's action against Medical Director Marr and CCA President Garner be DENIED AND DISMISSED WITH PREJUDICE.

It IS FURTHER RECOMMENDED that Gipson's motion for summary judgment (Doc. 23) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs etc.) may be filed.  Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged.  Timely objections will be considered by the district judge before making a final ruling.

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 22nd day of July 2015.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE