UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| KEITH GIPSON | CIVIL ACTION 1:14-CV-02278 |
| VERSUS | JUDGE TRIMBLE |
| TIM KEITH, *et al.* | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court are cross-motions for summary judgment (Docs. 83, 94). Gipson contends he was subjected to and injured by second hand smoke while incarcerated at Winn Correctional Center. Because Plaintiff Gipson has not carried his burdens of proof, Gipson's motion for summary judgment (Doc. 94) should be denied and Defendants' motion (Doc. 83) should be granted.

I. Background

Plaintiff Keith Gipson, an inmate confined by the Raymond Laborde Correctional Center ("RLCC") in Cottonport, Louisiana, filed this civil rights action pursuant to 42 U.S.C. § 1983 (Docs. 1, 9). The remaining defendants are Nicole Walker ("Walker") (assistant warden at Winn Correctional Center ("WCC") in Winnfield, Louisiana) and Secretary James LeBlanc ("LeBlanc") in his official capacity (Secretary of the Louisiana Department of Corrections).[1] Defendants answered the complaints (Docs. 16, 18).

---

[1] Gipson's action against the other defendants has been dismissed (Doc. 51).

Gipson contends that, while he was incarcerated in WCC in 2013 and 2014, he was exposed to second-hand smoke, to which he is allergic. Gipson seeks general and punitive damages, a declaratory judgment, and injunctive relief (Doc. 9).

Gipson contends he has been on prescription medication for smoke-related allergies since January 11, 2008 (Doc. 1). On December 14, 2013, Gipson was in a simple fight with another inmate, and Gipson was moved from a non-smoking tier (D-1) to A-1 tier, which was "filled with smoke from cigarettes, mojo, crystal meth, and marijuana, causing [him] respiratory related problems and severe headaches requiring medical treatments at [his} costs [sic]" (Doc. 9). Gipson further alleges that he won his disciplinary appeal for the simple fight on January 22, 2014 and the report was ordered expunged (Doc. 9). Gipson contends he has had respiratory problems and severe headaches from exposure to smoke (ETS) since 2010, and that Walker and LeBlanc knowingly committed fraud in denying there was no available non-smoking tier at WCC to cover up the fact that cigarettes and/or other drugs are smoked on every tier at WCC. Gipson contends the CCA employees do nothing to prevent smoking at WCC.

Gipson filed a previous motion for summary judgment (Doc. 23), which was denied (Doc. 45). Defendants filed a motion to dismiss (Doc. 29), which was granted in part (Doc. 51).

Defendants then filed this Motion for Summary Judgment (Doc 83), without supporting evidence, arguing the existing record does not establish a genuine issue

of material fact.  Gipson filed an opposition, with supporting evidence, to Defendants' motion (Docs. 89, 90) and a cross-motion for summary judgment (Doc. 94).

II. <u>Law and Analysis</u>

  A. <u>Standards governing the Motion for Summary Judgment generally.</u>

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[2]

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  See <u>Hefren v. McDermott, Inc.</u>, 820 F.3d 767, 771 (5th Cir. 2016) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant.  See <u>Dillon v. Rogers</u>, 596 F.3d 260, 266 (5th Cir. 2010).  However, a

---

[2] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts.

mere scintilla of evidence is insufficient to defeat a motion for summary judgment. See Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

### B. Eighth Amendment right against exposure to second-hand smoke and denial of medical care.

It is well-settled that inmates have a constitutional right against exposure to an excessive level second-hand smoke. In Helling v. McKinney, 509 U.S. 25, 33-35 (1993), the Supreme Court held that prison officials may violate the Eighth Amendment's prohibition against cruel and unusual punishment by exposing inmates to an excessive level of environmental tobacco smoke ("ETS"). Because of that, smoking is now prohibited inside any Louisiana state, local, or private correctional facility. La. R.S. 40:129.11(B)(14). However, correctional facilities have the discretion to designate outside smoking areas. See Gipson v. Keith, 678 Fed. Appx. 264, 265–66 (5th Cir. 2017).

To prove unconstitutional prison conditions, inmates need not show that death or serious injury has already occurred; they need only show that there is a substantial risk of damage to his future health. See Helling, 509 U.S. at 35. Therefore, to obtain relief, a prisoner must prove not only that the level of ETS to which he is exposed is unreasonable (the "objective factor"), but also that prison officials have shown "deliberate indifference" to the health risks associated with second hand smoke (the "subjective factor"). See Helling, 509 U.S. at 35-36.

The objective factor not only embraces the scientific and statistical inquiry into the harm caused by ETS, but also whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to

4

such a risk.[3]  Subjectively, the plaintiff must prove deliberate indifference, considering the officials' current attitudes and conduct and any policies that have been enacted.  The adoption of a smoking policy bears heavily on the inquiry into deliberate indifference.  See Helling, 509 U.S. at 35.

In Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001), the Fifth Circuit stated the Supreme Court's holding in Helling made clear that, even in the absence of any present physical injury resulting from involuntary exposure to environmental conditions posing a serious health risk, under § 1983 an inmate may obtain injunctive relief against continued exposure.  The prohibitive feature of § 1997e(e), requiring physical injury before recovery, does not apply in the context of requests for declaratory or injunctive relief sought to end an allegedly unconstitutional condition of confinement.

In this case, Gipson alleges not only unconstitutional conditions of confinement from exposure to second-hand smoke, but the denial of medical care.  Gipson shows he is allergic to second-hand smoke and, in 2008, the prison doctor ordered that Gipson be placed in a non-smoking tier (Doc. 94-2, p. 7/32).  Gipson contends Defendants' failure to place him in a non-smoking tier and/or to enforce the smoking ban aggravated his smoke allergy and necessitated medical care.

---

[3] This Court takes judicial notice that the United States Surgeon General's June 2006 report, available at  https://www.surgeongeneral.gov/library/reports/index.html, establishes conclusively that exposure to second hand smoke is unhealthy and dangerous, and that scientific evidence shows there is no safe level of or exposure to second hand smoke.

Defendants "object" (in their brief) to the Court taking judicial notice of this report, but do not state any basis for their objection (Doc. 83-3).  Therefore, it is not considered.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind, meaning deliberate indifference to a prisoner's constitutional rights, to be subjected to § 1983 liability. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The Supreme Court defined "deliberate indifference" as "subjective recklessness" or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer, 511 U.S. at 839.

### C. Gipson has not carried his burden of showing LeBlanc was deliberately indifferent to his exposure to second-hand smoke.

Gipson seeks prospective declaratory or injunctive relief against Secretary LeBlanc in his official capacity.[4] Gipson asks for an injunction prohibiting confinement that subjects him to second-hand smoke, in violation of his constitutional rights (Doc. 9).

Defendants contend Gipson's claims against Secretary LeBlanc should be dismissed because: (1) § 1983 does not support claims of vicarious liability against

---

[4] Official capacity actions for prospective relief are not treated as actions against the state. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

6

supervisory officials; and (2) Gipson has no evidence to show Secretary LeBlanc was deliberately indifferent to Gipson's exposure to second-hand smoke.

Defendants argue they are not liable to Gipson in their supervisory capacities. The doctrine of respondeat superior–which makes an employer or supervisor liable for an employee's alleged tort–is unavailable in suits under 42 U.S.C. §1983. See Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Supervisory officials cannot be held vicariously liable for their subordinates' actions. Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that cause plaintiff's injury. See Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. den., 508 U.S. 951 (1993); Thompkins, 828 F.2d at 303. Supervisory liability may exist even without overt personal participation in an offensive act if supervisory officials implement a constitutionally deficient policy. See Terry v. LeBlanc, 479 Fed. Appx. 644, 646 (5th Cir. 2012) (citing Thompkins, 828 F.2d at 304).

In 2009, a no-smoking rule was implemented by state statute inside all prisons in Louisiana. See La. R.S. 40:129.11(B)(14). It was Secretary LeBlanc's duty to direct the prisons to implement it, and he apparently did so (Doc. 94-2, p. 1/32). Gipson shows that WCC implemented a no-indoor-smoking policy in accordance with state law and Secretary LeBlanc's directive in 2009 (Doc. 94-2, Ex. p. 1/32). However, since smoking was still allowed outdoors and tobacco could be chewed indoors, tobacco products were still sold in the commissary. Therefore, Gipson's argument that tobacco products were still sold in the commissary is unavailing.

Gipson also contends inmates continued to smoke despite the smoking ban, and guards did nothing about it.

Secretary LeBlanc does not supervise or control the day-to-day operations and employees of WCC. WCC was operated by Corrections Corporation of America. LeBlanc is a state-wide policy-maker for the Department of Corrections. He was responsible for directing the prison officials to implement the new ban on indoor smoking in all prisons (including WCC) and, according to Gipson's evidence, LeBlanc did that. Moreover, Gipson has not pointed to any evidence that indicates LeBlanc was deliberately indifferent to Gipson's serious medical need to be in a smoke-free environment. To the contrary, LeBlanc told the prisons to ban all indoor-smoking.

Therefore, Gipson has failed to carry his burden of showing Secretary LeBlanc was deliberately indifferent to his exposure to second-hand smoke in WCC. Gipson's claims for declaratory and injunctive relief[5] against Secretary LeBlanc should be denied. Gipson's motion for summary judgment should be denied (Doc. 94), and Defendants' motion for summary judgment should be granted (Doc. 83) on this issue.

### D. Gipson has not shown that Assistant Warden Walker was deliberately indifferent to his exposure to second-hand smoke.

Defendants contend Gipson's claims against Assistant Warden Walker should be dismissed because: (1) § 1983 does not support claims of vicarious liability against supervisory officials; and (2) Gipson has no evidence to show Walker was deliberately indifferent to Gipson's exposure to second-hand smoke.

---

[5] The complete ban on tobacco at WCC and Gipson's transfer to another prison have rendered Gipson's claim for injunctive relief moot.

Gipson contends Assistant Warden Walker failed to enforce the no-indoor-smoking ban at WCC. Gipson alleges inmates would even roll chewing tobacco up in thin paper (such as pages torn from Bibles) and smoke it.

Gipson submitted an affidavit, signed by six other inmates, stating that smoking was still allowed inside at WCC, as indicated by the policy for a "smoke free tier" (Doc. 94-2, pp. 5-6/32). Another affidavit (unverified) dated March 26, 2015, signed by five other inmates, states that inmates are allowed to smoke cigarettes, mojo (morphine), crack, marijuana, and crystal meth, without disciplinary repercussions, in WCC (Doc. 94-2, p. 28/32). Gipson also submitted a poster that was hung in the prison, informing inmates that smoking Dip is dangerous and has a very high mortality rate (Doc. 94-2, p. 27/32).

Gipson submitted a notice from Warden Keith Deville that notified the WCC inmates and employees that WCC became a smoke-free facility on January 15, 2016, which meant that all smoking was banned, even outdoors (Doc. 94-2, p. 11/32). Another notice in July 2016 stated WCC had become a tobacco-free facility, and all forms of tobacco were explicitly banned (Doc. 94-2, p. 4/32).[6]

Gipson's evidence shows the prison officials at WCC clearly took the necessary steps for controlling indoor smoking and the use of chewing tobacco for smoking at WCC. Although Gipson argues the WCC commissary continued to sell tobacco

---

[6] Gipson submitted a November 4, 2015 commissary order sheet that lists tobacco and tobacco products, including rolling paper and a cigarette roller (Doc. 94-2, p. 3/32). That is irrelevant since smoking was still allowed outdoors at WCC, until January 15, 2016.

Gipson also attached what he alleges is a December 2017 order page for the prison commissary at Raymond Laborde Correctional Center, with the option to order three types of tobacco (Doc. 94-2, p. 32/32), that is not relevant to the issue of tobacco-smoking at WCC.

9

products after 2009, that argument is not relevant since inmates and employees were still permitted to smoke outdoors at WCC.

Gipson contends Walker has not enforced the smoking bans. However, Gipson has not provided any evidence that shows Walker personally allowed inmates to ignore the bans, and has not cited any specific instances involving Walker. Nor has Gipson alleged or shown that Walker was a policy-maker at WCC, in her role as assistant warden. Therefore, Gipson has not carried his burden of proving Walker was deliberately indifferent to his exposure to second hand smoke.

Gipson's motion for summary judgment should be denied (Doc. 94), and Defendants' motion for summary judgment should be granted (Doc. 83) on this issue.

### E.  Gipson's state law claims should be denied.

In its opinion on Gipson's recent appeal, the Fifth Circuit stated in a footnote (in dicta) that "[a] close reading of Gipson's complaint indicates that, at best, he asserted a state law claim for fraud as to Keith, Nicole Walker, and LeBlanc only" (Doc. 63, p. 4/5).[7]

Gipson contends in his amended complaint that Keith, Walker, and LeBlanc knowingly committed "fraud" by denying there was "no available non-smoking tier at WCC to cover up the fact that cigarettes and/or other smoke-able drugs are smoked on every tier" at WCC (Doc. 9, p. 2/5).

---

[7] District courts have "supplemental jurisdiction" over claims so related to a federal question "that they form part of the same case or controversy." 28 U.S.C. §1367(a); see also Rodriguez v. Pacificare of Texas, Inc., 980 F.2d 1014, 1018-19 (5th Cir.), cert. den., 508 U.S. 956 (1993); Whalen v. Carter, 954 F.2d 1087, 1097 (5th Cir. 1992).

In Louisiana, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. C.C. art. 1953; see also Lomont v. Bennett, 172 So,3d 620, 628 (La. 2015), cert. den., 136 S.Ct. 1167 (U.S. 2016).

Gipson has not raised a genuine issue of material fact on the issue of whether Defendants committed fraud. Since 2009, every prison tier is a non-smoking tier. Gipson's allegations indicate a failure to enforce the state-wide ban against indoor-smoking in prisons, but not fraud.

Gipson's motion for summary judgment should be denied (Doc. 94), and Defendants' motion for summary judgment should be granted (Doc. 83) on this issue. Gipson's state law fraud claim should be denied and dismissed with prejudice.

### III. Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Gipson's motion for summary judgment (Doc. 94) be DENIED,

IT IS FURTHER RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. 83) be GRANTED, and that Gipson's action against LeBlanc and Walker, under both federal and state law, be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections

within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS ORDERED AND SIGNED in Chambers at Alexandria, Louisiana on this __2nd__ day of March, 2018.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge